UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Louise Davenport, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| City of Chicago - Mayor Daley, the Chicago | ) | No. 09 C 4517 |
| Police Department, Jody Weis, Superintendent, | ) | |
| Officer Dovgin, Officer Rice, Sgt. Engstrom, | ) | Hon. Marvin E. Aspen |
| Sgt. Giliberto and other unknown officers, all | ) | |
| of the Central District and each in his/her | ) | |
| official and individual capacities, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Plaintiff Louise Davenport's application to proceed *in forma pauperis* with her complaint against the City of Chicago, Mayor Daley, the Chicago Police Department and its Superintendent, Jody Weis, and various known and unknown police officers. On July 27, 2009, Davenport brought this action under 42 U.S.C. § 1983, alleging that Defendants violated her constitutional rights and the Americans with Disabilities Act ("ADA") and engaged in tortious conduct related to her arrest and detention in 2007. As set forth below, we grant Davenport's application but dismiss several claims asserted in her complaint.

### STANDARD OF REVIEW

Before granting leave to file *in forma pauperis*, we must first determine whether or not the plaintiff is indigent. 28 U.S.C. § 1915(a)(1). We must also conduct an initial review of the plaintiff's complaint and dismiss the action if we find that (1) it is frivolous or malicious; (2) it

fails to state a claim on which relief may be granted; or (3) it seeks damages from a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B)(i)-(iii). As to the second factor, failure to state a claim, we apply the test for dismissal under Rule 12(b)(6), which requires that a complaint contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1974 (2007); *see also George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007). Because Davenport is proceeding *pro se*, we have a responsibility to construe her complaint liberally. *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). It is the "well established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987).

## ANALYSIS

### A.  Indigence

In support of her allegation of poverty, Davenport submitted the required financial affidavit. She states that she is not employed and does not have any source of income, but for food stamps. (IFP App. ¶¶ 2, 4.) She further declares that she has no assets or bank accounts containing more than $200. (*Id.* ¶¶ 4-9.) Moreover, Davenport is currently homeless. (Compl. ¶ 3.) Accordingly, we find Davenport's allegation of poverty to be true and thus consider whether she has stated any valid claims for relief against Defendants.

### B.  Sufficiency of Allegations under Rule 12(b)(6)

#### 1.  Factual Allegations

##### a.  First Arrest and Loss of Bags

According to the complaint, on July 26, 2007, Officer Dovgin arrested Davenport, along

with other homeless individuals, for trespassing under an overpass. (*Id.* ¶¶ 8-17.) At that time, Office Dovgin instructed Davenport to take everything out of her pockets, and she slipped her identification and money into one of her bags. (*Id.* ¶¶ 18-20.) Upon arrival at the police station, Davenport turned over her Medical Alert ID necklace and some other items, which were inventoried and sealed in plastic bags. (*Id.* ¶ 23.) Davenport became concerned about her other bags, which she did not initially see at the station and which contained a glucose meter, medication, important documents and other items. (*Id.* ¶¶ 21-24.) That evening, upon return from a trip to Mercy hospital, Davenport saw her bags at the station and noticed that they had been opened. (*Id.* ¶¶ 38-39.) Some items had been removed, inventoried and sealed in plastic property bags. (*Id.*) Davenport asked Officer Bradfield if she could remove her money and identification before the bags were taken, but he denied her request. (*Id.* ¶¶ 40-41.) An unknown white, male officer then arrived with two janitorial employees, who wheeled her bags away in a trash container. (*Id.* ¶¶ 42-43.) After Davenport protested, the unknown officer pointed to the receipt for her bags, which said they had been disposed of because they contained rotting food. (*Id.* ¶¶ 44-46.) Davenport complained to Sgt. Engstrom, who did nothing to assist Davenport. (*Id.* ¶¶ 47-49.)

Davenport was released from county jail on August 3, 2007, whereupon she inquired about her bags.[1] (*Id.* ¶ 63.) Officer Pickett informed her that her bags were not at county jail. (*Id.* ¶¶ 62-64.) Davenport went to the police station at 17th and State Street and asked about her bags, but was told that they were not there. (*Id.* ¶ 65.) After filing a complaint with the Office

---

[1] The complaint does not clearly state whether the bags Davenport sought were the two bags she witnessed being thrown in the garbage container on July 26, 2007, or the plastic bags of items that had been inventoried by the police.

of Professional Standards ("OPS"), Davenport met with Ms. Tolliver, who instructed her to try the Property Secton at the facility at 11th and Homan. (*Id.* ¶¶ 67-69.) She did so but struck out. (*Id.* ¶¶ 70.) She then checked the facility at Harrison and Kedzie, though her bags were not there, and was told to try the warehouse at 21st and Michigan. (*Id.* ¶ 70.) A friend, who happens to be a police officer, contacted that location but informed Davenport that her bags were not at 21st and Michigan. (*Id.* ¶¶ 71-72.)

On October 4, 2007, Davenport met with an investigator, Sgt. Giliberto, about her OPS complaint and missing bags. (*Id.* ¶ 85.) She informed him that the officers intentionally took her bags so that she would be unable to use the documents in them in a pending court case.[2] (*Id.* ¶ 86.) He said that he would investigate, although he said he did not believe the officers took her bags. (*Id.* ¶ 91.) Davenport attempted to follow-up on the investigation several times and finally heard in November 2008 that it had been closed. (*Id.* at 13.[3]) To date, she has not heard anything about her bags, which remain missing. (*Id.*) She alleges that many of the items in those bags were irreplaceable, including original and personal documents. (*Id.*)

### b. Medical Concerns While in Custody

After arriving at the police station on July 26, 2007, Davenport was initially handcuffed to a bench and permitted to use the bathroom. (*Id.* ¶ 25.) She was then taken to a room with

---

[2] It appears that Davenport has filed at least two other actions in the Northern District of Illinois. (*See Davenport v. SSA et al.*, No. 08-4246 (Judge Manning dismissed this matter for lack of jurisdiction and the Seventh Circuit affirmed her ruling on January 12, 2009.); *Davenport v. Barnhart et al.*, No. 07 C 1888 (Judge Kennelly dismissed this matter for lack of subject matter jurisdiction on August 23, 2007.).) Davenport alleges that the documents in her missing bags were critical to her litigation of *Davenport v. Barnhart et al.*, No. 07 C 1888. (Compl. ¶ 6.)

[3] Davenport did not number the paragraphs of the complaint on page 13 and thus, we shall refer to the page number as necessary.

-4-

another female detainee. (*Id.* ¶ 26.) At some point thereafter, Davenport needed to use the bathroom again and asked repeatedly for permission to do so. (*Id.* ¶¶ 27-31.) Although she yelled and knocked on the glass to get an officer's attention, she was ignored. (*Id.* ¶ 29.) When one individual stopped, she explained that she has medical problems with her kidneys and that she needed to use the bathroom. (*Id.* ¶ 30.) Although he informed another individual, she was not released to use the toilet. (*Id.*) She was suffering severe abdominal pain and ultimately urinated on the floor. (*Id.* ¶¶ 31-33.) As she was being led out of the jail, Officer Rice repeatedly called Davenport "nasty" and made other rude remarks. (*Id.* ¶ 35.) She was then taken to Mercy Hospital, where doctors diagnosed her with a urinary tract infection. (*Id.* ¶¶ 34-36.) The doctors issued her a prescription, but the officer never gave it to her. (*Id.* ¶ 36.) She was given food because of her low blood sugar. (*Id.* ¶ 37.) Davenport also generally alleges that she suffers from congestive heart failure, rheumatoid arthritis, peripheral artery disease, blindness in her left eye, diabetes, hypertension and other conditions. (*Id.* ¶ 4.)

In addition, Davenport alleges that the police failed to accommodate medical conditions affecting her eyes. (*Id.* ¶¶ 51-58.) At some point after her arrest on July 26, but before her transfer to county jail on July 28, 2007, she was "again denied reasonable accommodation and subject to more pain and suffering and emotional distress when [she] was taken to an area to have [her] picture taken for the mug shot." (*Id.* ¶ 51.) An unknown female officer instructed her to look straight ahead at a light for the picture, but Davenport refused because it burned her eyes. (*Id.* ¶ 52.) The officer returned Davenport to her cell, claiming that she could not be processed if she would not cooperate. (*Id.* ¶¶ 53-54.) Before leaving for the night, the officer asked Davenport if she was willing to participate, but Davenport declined. (*Id.* ¶ 56.) The next day,

the officer encouraged Davenport to let her take the picture and Davenport again explained her conditions: inflammation of the iris, glaucoma, corneal edema and complete blindness in the left eye. (*Id.* ¶¶ 54, 57.) At that point, the officer took the picture, without Davenport focusing on the light, and gave her some bread. (*Id.* ¶¶ 57, 59-60.)

### c. Second Arrest

Davenport alleges that she was arrested by the same officers again, for the same conduct, on August 14, 2007. (*Id.* ¶¶ 73-75.) On that occasion, however, the officers left her bags at the site of arrest and did not bring them to the station. (*Id.* ¶¶ 76-79, 82-84.) She alleges that when she complained about pain following this second arrest, she was taken to the hospital for medication. (*Id.* ¶ 80.) A judge then released her on an I-bond. (*Id.* ¶ 81.)

### 2. Constitutional Claim regarding Loss of Bags

In her complaint, Davenport alleges that on July 26, 2007,[4] Defendants violated her right to due process by disposing of her personal property, including medication and medical supplies, as well as important documents. (*Id.* ¶¶ 1, 6, 23-24, 48-50; *see id.* at 13.) She contends that Defendants deliberately took her bags and failed to return them in order to prevent her from

---

[4] As an initial matter, Davenport's claims under § 1983 are subject to a two-year statute of limitations in Illinois. *Dominguez v. Henley*, 545 F.3d 585, 588 (7th Cir. 2008); *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993); *Tamayo v. Hamer*, 256 F.R.D. 175, 177 (N.D. Ill. 2009). Accordingly, barring any applicable exceptions to the operation of this limitations period, Davenport's claims with respect to conduct occurring before July 27, 2007 may not be actionable. Nonetheless, statutes of limitation are not jurisdictional, but are affirmative defenses to be raised by the defendant. *Day v. McDonough*, 541 U.S. 198, 206, 126 S. Ct. 1675, 1681 (2006); *Dandy v. UPS, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). Accordingly, we will not address any possible statute of limitations issues at this stage. *Tamayo*, 256 F.R.D. at 177 ("Although Tamayo has included allegations . . . showing that her Section 1983 equal protection claims are time-barred, [she] was not required to anticipate in her complaint that Defendants would assert the statute of limitations defense.").

using her documents to respond to a motion to dismiss pending in another federal lawsuit, *Davenport v. Barnhart et al.*, No. 07 C 1888 (N.D. Ill.). (*Id.* ¶¶ 6, 50.)

Davenport's claim fails, however, because she has another remedy at law. The Supreme Court and the Seventh Circuit have held that officers do not violate a prisoner's right to due process by confiscating and destroying property, without authority,[5] so long as the state "provides [the prisoner] with an adequate postdeprivation remedy." *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993) (finding no due process violation where prison officials removed and destroyed plaintiff's property – including clothing and legal papers – during shakedowns); *see Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3203-04 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *see also Morissette v. DeTella*, No. 96 C 6798, 1997 WL 619851, at *7-9 (N.D. Ill. Sept. 29, 1997). Pursuant to state law, Davenport may file a tort claim in the Illinois Court of Claims for her property losses. *Stewart*, 5 F.3d at 1036; *Morissette*, 1997 WL 619851, at *8; *see also* 705 ILCS 505/8; *Lonzo v. Ill.*, No. 91 CC 0261, 1997 WL 1878050, at *1-2 (Ill. Ct. Cl. Aug. 28, 1997) (holding state liable for petitioner's loss of his van, and the personal property therein, upon his arrest). She thus cannot state a § 1983 due process claim for these losses.[6]

---

[5] We interpret Davenport's complaint to allege that Defendants' conduct was random and unauthorized, as opposed to sanctioned "by an established state procedure." *Hudson*, 468 U.S. at 532, 104 S. Ct. at 3203.

[6] To the extent that Davenport also intended to allege that the deprivation of her legal papers denied her right of access to the courts, she has failed to state such a claim. *Stewart*, 5 F.3d at 1036 n.9; *Morissette*, 1997 WL 619851, at *9. "A prisoner has a constitutional right of

### 3. Constitutional Claim regarding Conditions of Pretrial Detention

Davenport can proceed, however, with a § 1983 claim based on the conditions of her confinement. Davenport alleges that unknown officers refused to let her use the toilet following her arrest on July 26, 2007, despite her repeated requests and their knowledge of her kidney condition. (Compl. ¶¶ 27-31.) After she urinated on the floor, the officers took Davenport's complaints seriously and transferred her to Mercy Hospital for treatment. (*Id.* ¶¶ 32-36.) Davenport further alleges that, at some time after her arrest, an unknown female officer refused to accommodate Davenport's eye conditions. (*Id.* ¶¶ 51-58.) Davenport contends that she could not focus on a bright light for her mug shot, as demanded by the photographing officer, and the officer sent her back to her cell until she would comply. (*Id..* ¶¶ 53-57.) The officer then took the picture the following day, without Davenport's cooperation. (*Id.* ¶¶ 57.) Davenport, a diabetic, also alleges that the officers denied her food. (*Id.* ¶¶ 37, 59-60.)

---

access to the courts" and the "loss of legal documents that results in a delay or interruption in pending or contemplated litigation may indicate a constitutional deprivation." *Morissette*, 1997 WL 619851, at *9 (internal quotation omitted). "To sustain an access to the courts claim, [Davenport] must allege that [she] was prejudiced by the denial of access." *Stewart*, 5 F.3d at 1036 n.9; *see also Whitfield v. IDOC*, No. 02 C 50387, 2004 WL 1803350, at *1 (N.D. Ill. Aug. 5, 2004) (explaining that a plaintiff must allege that he suffered "prejudice such as missed court deadlines, failure to make timely filings or dismissal of legitimate claims"). Davenport alleges that Defendants took her documents so that she could not respond to a motion to dismiss in Case No. 07 C 1888, but also states that she did file a response to that motion. (Compl. ¶¶ 6, 50, 73.) She does not allege that Defendants' conduct impeded her ability to fully and timely file that response, or resulted in the dismissal of legitimate claims.

Davenport further claims that her "ID thieves were constantly trying to prevent [her] from using the documents . . . in a quiet title action to the 11 parcels of property that they stole from [her]." (*Id.* at 13.) According to court records, Case No. 07 C 1888 was not a quiet title action, however, but a social security matter. This allegation concerning a quiet title action with non-parties – appearing in the final paragraph of Davenport's complaint – thus appears unrelated and contradictory to her allegations concerning Defendants' conduct. At this juncture, we find Davenport's allegations insufficient to state a claim for denial of access to the courts.

Davenport's complaint is sufficient, at this stage of the litigation, to state a Fourth Amendment claim based on the allegedly unreasonable conditions of her confinement. "Claims regarding conditions of confinement for pretrial detainees, such as [Davenport], who have not yet had a judicial determination of probable cause . . . are . . . governed by the Fourth Amendment and its objectively unreasonable standard."[7] *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007); *Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006); *Cobige v. City of Chi.*, No. 06 C 3807, 2009 WL 2413798, at *4-5 (N.D. Ill. Aug. 6, 2009); *Swanigan v. Trotter*, No. 07 C 4749, 2009 WL 2409431, at *14 (N.D. Ill. Aug. 4, 2009). Davenport's allegations regarding her confinement, including denial of food and access to the restroom, adequately describe what could be viewed as unreasonable conditions. This § 1983 claim thus withstands our initial review for purposes of evaluating Davenport's *in forma pauperis* application.[8] *See Swanigan*, 2009 WL 2409431, at *15-17; *Lopez*, 464 F.3d at 720.

### 4. Americans with Disabilities Act

In her complaint, Davenport asserts a "civil rights [claim] pursuant to . . . [§] 1983 for violations of the Americans with Disabilities Act." (Compl. ¶ 1.) She also alleges that she has

---

[7] The complaint does not state that Chicago police officers had a warrant for Davenport's arrest, nor does it allege that she had a probable cause hearing before a judge at the time these events occurred. We thus evaluate the sufficiency of her claim with a Fourth Amendment analysis but acknowledge that a different standard might apply if probable cause had been found. "[T]he protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Lopez*, 464 F.3d at 719; *see also Williams*, 509 F.3d at 402-03.

[8] Davenport's allegation that Officer Rice repeatedly called her "nasty" and made other rude comments is not actionable, however. *Swanigan*, 2009 WL 2409431, at *15 ("While [the officers] made derogatory statements to [plaintiff] after they noticed the urine, § 1983 does not provide redress for every rude or insensitive comment that police officers make to arrestees.")

several medical conditions that meet the definition of "disability" under the ADA, including congestive heart failure, rheumatoid arthritis, peripheral artery disease, blindness in her left eye, diabetes, hypertension and other conditions. (*Id.* ¶ 4.)

Initially, "it is unclear whether a [§] 1983 claim based on violations of the ADA . . . is cognizable." *Torrence v. Advance Home Care, Inc.*, No. 08 C 2821, 2009 WL 1444448, at *7 (N.D. Ill. May 21, 2009). Indeed, "a number of district courts in this circuit have held that [§] 1983 claims may not rest on the ADA" because Congress has already provided a comprehensive enforcement mechanism within the ADA. *Id.* (collecting cases). Nonetheless, we need not address this question because Davenport has not adequately stated an ADA claim.

Davenport does not describe the nature of her ADA claim in any detail, a fatal flaw. *See George*, 507 F.3d at 608 ("Plaintiffs need not plead facts . . . but they must give enough detail to illuminate the nature of the claim and allow defendants to respond.") (internal citation omitted). Reading her complaint liberally, as we must, we assume for purposes of this analysis that she asserts a claim of discrimination under Title II, which applies to public entities.[9] *See* 42 U.S.C. §§ 12131-32; *see also Soignier*, 92 F.3d at 551 n.3. Title II provides, among other things, that "no qualified individual with a disability shall, by reason of such disability . . . be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual" refers to "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). Even construing the ADA and Davenport's

---

[9] As with a § 1983, claims under Title II of the ADA have a two-year statute of limitations. *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 n.3 (7th Cir. 1996). Thus, Davenport's allegations concerning events taking place before July 27, 2007 may be barred.

complaint broadly, we conclude that Davenport simply does not make out a Title II claim. She has not alleged, for example, that she is a "qualified individual," or for what Chicago police program or activity she might be qualified. *Id.* We will not speculate at this juncture, for example, whether the taking of a mug shot constitutes a public service provided by the Chicago police department. *Id.* § 12131(2). Moreover, Davenport does not allege that Defendants discriminated against her "by reason of [her] disability." *Id.* § 12132; *see Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751-52 (7th Cir. 2006); *Sudduth v. Donnelly*, No. 08 C 4227, 2009 WL 918090, at *6 (N.D. Ill. Apr. 1, 2009). On the whole, Davenport's disability-related allegations simply do not fall within the scope of a Title II claim but are more appropriately pursued via her remaining § 1983 claim.

### 5. Equal Protection Claim

Davenport generally alleges that Defendants violated her right to equal protection as guaranteed by the Fourteenth Amendment of the Constitution. (Compl. ¶¶ 1, 7.) She further states that she is a member of a protected group, as a black female, and that she is also disabled and homeless. (*Id.* ¶¶ 3-4.) Nonetheless, Davenport has failed to state an equal protection claim.

"To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that [s]he is a member of a protected class, that [s]he is otherwise similarly situated to members of the unprotected class, and that [s]he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (internal quotation omitted); *see also Hu v. City of Chi.*, No. 08 C 4108, 2009 WL 635522, at *2 (N.D. Ill. Mar. 12, 2009) (concluding that plaintiff satisfied our notice pleading standard for an equal protection claim by alleging that "the city acted as it did because of his national origin");

*Tamayo*, 256 F.R.D. at 177-78 (denying motion to dismiss where plaintiff alleged that she received lower compensation "because she was a woman"); *Johnson v. Johnson*, No. 07 C 7036, 2008 WL 4874190, at *1 (N.D. Ill. June 26, 2008) (denying motion to dismiss where plaintiff alleged, *inter alia*, that officers illegally arrested him and denied him necessary medical attention during his post-arrest detention "because of his race"). In addition to alleging this discriminatory effect, a plaintiff must also allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001); *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *Webb v. Budz*, 480 F. Supp. 2d 1050, 1057 (N.D. Ill. 2007).

Here, however, Davenport has not alleged that Defendants acted with a discriminatory purpose. Although Davenport alleges that she falls within a protected class and was "treated differently than others who were arrested" with her, she does not contend that Defendants mistreated her *because of* her race or other protected characteristic. (Compl. ¶ 7.) Like her ADA claim, without an allegation of purposeful discrimination, Davenport's equal protection claim cannot stand.

### 6. Claim for Intentional Infliction of Emotional Distress

We broadly interpret Davenport's complaint to also include a claim for intentional infliction of emotional distress ("IIED").[10] (Compl. ¶¶ 2, 35, 49, 51.) To state an IIED claim,

---

[10] We further observe that Illinois has a one-year statute of limitations for tort claims, such as IIED, asserted against governmental entities and their employees. *See* 745 ILCS 10/8-101(a); *Evans v. City of Chi.*, 434 F.3d 916, 934 (7th Cir. 2006). Accordingly, Davenport's complaint raises an obvious statute of limitations question, given that Defendants' allegedly tortious conduct took place in 2007 but she neglected to file suit until 2009. As discussed earlier, however, we shall not address statute of limitations issues at this juncture.

Davenport must allege that: (1) Defendants' conduct was extreme and outrageous; (2) Defendants intended that their conduct would "cause severe emotional distress or [were] aware of a high probability of causing severe emotional distress;" and (3) Defendants' conduct actually caused severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 982 (7th Cir. 2008); *Dunn v. City of Elgin*, 347 F.3d 641, 651 (7th Cir. 2003). Liability for IIED "does not extend to mere insult, indignities, threats, annoyances, petty oppressions or trivialities" and can attach "only in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 935, 803 N.E.2d 619, 625 (1st Dist. 2004) (internal quotations and citations omitted). Indeed, the "distress inflicted must be so severe that no reasonable person could be expected to endure it." *Id.*; *see also Hobson v. Tishman Speyer Props., L.P.*, No. 07-5744, 2008 WL 2625905, at *5-6 (N.D. Ill. June 27, 2008); *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (Ill. 1989).

Even if we assume that Davenport adequately plead the first and third elements of an IIED claim, we conclude that she failed to sufficiently allege the intent requirement. She alleges, for example, that Defendants were "*grossly negligent* in repeatedly causing the intentional infliction of emotional distress" by denying her "reasonable accommodations for [her] medical conditions." (Compl. ¶ 2 (emphasis added).) Davenport further states that Sgt. Engstrom "in a supervisory role, actively participated in the destruction of [her] personal property, which she should have known was likely to cause the emotional distress and financial hardship that it did." (*Id.* ¶ 49.) Nowhere, however, does she allege that Defendants intended for their conduct to inflict severe emotional distress or that they were "aware of a high probability" of doing so. *See*

*Breneisen*, 512 F.3d at 982; *Dunn*, 347 F.3d at 651. In fact, she repeatedly alleges that Defendants' sole reason for arresting her and taking her bags was to "get the documents so that [she] couldn't use them in [her] answer to the . . . motion to dismiss" pending in another matter. (Compl. ¶ 50; *id.* ¶¶ 86, 88.) Accordingly, she cannot proceed with an IIED claim.

## CONCLUSION

For the foregoing reasons, we grant Davenport's application to proceed *in forma pauperis* but dismiss her claims with one exception: she may proceed with her § 1983 claim concerning the conditions of her post-arrest confinement. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: August 31, 2009